Max Cooper and Irving Fisher, Plaintiffs and Counter-
defendants Below, Appellants, v. Peter S. Peder-
sen, et al., etc., Defendants Below, Edward
Martin, Defendant and Counterplaintiff Below,
Appellee.

Gen. No. 48,220.

First District, First Division.

March 6, 1961.

Rehearing denied April 10, 1961.

Harold P. Minow and Samuel S. Cohon, of Chicago (Samuel S. Cohon, of counsel) for appellants.

Joseph Keig, Sr., of Chicago, for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

This is a representative stockholders' suit, charging misappropriation of corporate funds. Plaintiffs, as counterdefendants, appeal from a decree finding defendant Martin, as counterplaintiff, to be the equitable owner of their stock; directing them to assign and deliver their stock certificates to him; and dismissing their complaint for want of any justiciable interest in the subject matter.

Plaintiffs, as the owners of 80 shares of stock of defendant MPH Manufacturing Corporation, by their amended complaint allege that the individual defendants have drawn unreasonable and excessive salaries; that although warranted, no dividends were declared; and that the profits of MPH were siphoned to the detriment of the shareholders and for the benefit of the individual defendants. Defendant Martin answered, substantially denying the allegations; denies that plaintiffs are the owners of 80 shares of MPH stock and, by his amended counterclaim, prays for specific performance of an oral agreement to purchase plaintiffs' shares of stock for $3,000. Plaintiffs' answer to the counterclaim denies the oral agreement and alleges that the purported oral agreement is in contravention of the Statute of Frauds and unenforceable.

The issue of ownership of stock was referred to a master in chancery, who found that plaintiff Max

Cooper was the owner of 60 shares and plaintiff Irving Fisher the owner of 20 shares of MPH stock; that on or about August 18, 1959, plaintiffs entered into an oral agreement with defendant Martin for the sale of the 80 shares of stock for $3,000 and for certain machinery for $3,655; that on August 20, 1959, plaintiffs and defendant Martin met in the office of his attorney, and Martin tendered checks in payment for the stock and machinery; that plaintiffs rejected the tender and repudiated the oral agreement; that title to the 80 shares of stock and of the machinery was never transferred to Martin; "that the oral agreement of sale is unenforcible under the Statute of Frauds (Chapter 121½, Paragraph 4, Illinois Revised Statutes, 1959) since it was not accompanied by the written memorandum required by the Statute, nor was there something given in earnest to bind the contract or part payment"; and "that the Statute of Frauds . . . is constitutional under the Constitution of the State of Illinois, Article II, Section 19." The master recommended a decree in favor of plaintiffs.

The chancellor sustained objections to the master's report and found that the oral contract was complete, definite, equitable and enforceable; that counterplaintiff Martin delivered checks to counterdefendants, and "that upon the delivery of such checks . . . an enforceable agreement . . . was made by the parties and performed by Edward Martin, and that the Counter-Plaintiff, Edward Martin, thereby became and is the owner in equity of such eighty (80) shares of M. P. H. Manufacturing Corporation, Inc." The decree directed the counterdefendants to assign their stock to Martin upon payment of the amounts orally agreed upon and dismissed the complaint for want of equity.

■ A subordinate question urged by defendant Martin (appellee), without cross appeal, is whether the Statute of Frauds of the Uniform Sales Act (Ill.

Rev. Stat. 1959, Ch. 121–½, § 4) is unconstitutional because it violates section 19 of Article II of the Illinois Constitution. The finding of the master that the Statute of Frauds was constitutional was confirmed by the chancellor, and in this appeal both parties have argued the merits of the question. We cannot consider the merits of this question, as we do not have the jurisdiction to entertain it. People ex rel. Spitzer v. County of LaSalle (1959), 23 Ill. App.2d 139, 144, 162 N.E.2d 433; People v. Kingery (1938), 368 Ill. 205, 207, 13 N.E.2d 271.

■ ■ We think defendant Martin's contention, based upon section 19 of Article II, is essentially an argument based on the doctrine of equitable estoppel without facts to bring it within that doctrine. In Illinois, the defense of equitable estoppel is clearly established, but "the moral wrong of refusing to be bound by an agreement because it does not comply with the Statute of Frauds, does not of itself authorize the application of the doctrine of estoppel. . . . To hold otherwise would be to render the statute entirely nugatory." Ozier v. Haines (1952), 411 Ill. 160, 163, 103 N.E.2d 485.

The principal question is whether the tender of the purchase price of the stock, admittedly made and refused, was sufficient to take the oral agreement out of the Statute of Frauds and make it enforceable against plaintiffs, or whether the repudiation by plaintiffs was timely.

Defendant Martin contends, "notwithstanding Cooper and Fisher refused to take the checks proffered to them by Martin prior to their repudiation of the oral contract," that he made complete payment, in the manner required by the oral agreement, to make it enforceable according to the provision of section 4 of the Uniform Sales Act, which requires something to be given in part payment.

██ Statutes of Frauds exist generally throughout the United States, and the purpose is to prevent fraud and perjury in the enforcement of parol contracts. (20 I.L.P., Frauds, § 2; 37 C.J.S. 513.) Section 4 of the Uniform Sales Act applies to the sale of corporate stock. Illinois-Indiana Fair Ass'n v. Phillips (1928), 328 Ill. 368, 159 N. E. 815.

Although authorities hereafter discussed involve the delivery of goods and the acceptance by the buyer, we believe the determinative theory of these decisions applies here. In order to avoid the effect of the statute, there must be a delivery of the goods sold from the seller to the buyer and an acceptance by the buyer, with an intent on the part of both parties of vesting the right of possession in the buyer. (20 I.L.P., Frauds, § 10.) "Actual and intentional receipt of the goods by the buyer is essential to satisfy the provisions of the statute." (Chicago Metal Refining Co. v. Jerome Trading Co. (1920), 218 Ill. App. 333, 339.) "The intent must be mutual, on the part of the seller to deliver to the buyer, and on the part of the buyer to accept from the seller. Either party alone may not effect a delivery and acceptance." (Illinois Meat Co. v. American Malt & Grain Co. (1923), 229 Ill. App. 311, 314.) In order to take the contract out of the operation of the statute, there must "not only be a delivery by the seller, but an ultimate acceptance of the possession of the goods by the buyer, and that this delivery and acceptance can only be evinced by unequivocal acts independent of the proof of the contract." (Hinchman v. Lincoln (1888), 124 U. S. 38, 50.) "The object of the statute was not only to guard against the dishonesty of parties and the perjury of witnesses, but against the misunderstanding and mistakes of honest men. . . . To satisfy the statute there must be a delivery by the vendor, with an intention of vesting the right of possession in the vendee, and there must be an actual acceptance by

the latter with the intent of taking possession as owner." Shindler v. Houston (1848), 1 N. Y. 261.

■ There is no evidence of any delivery, attempted delivery or transfer of the stock certificates. Defendant Martin's case rests entirely on a tender of checks by him, which were not accepted by the plaintiffs. Even though the checks may have been momentarily in the hands of the plaintiffs (which is denied), the record does not show an acceptance of the checks with intent of taking possession as owners. The tender of the checks without acceptance was ineffectual and was not sufficient to make the oral agreement enforceable and to take it out of the operation of the statute. We conclude that the chancellor was in error in finding that the oral agreement was enforceable.

The decree is reversed and the matter is remanded for further proceedings in accordance with the views expressed herein.

Reversed and remanded.

KILEY, P. J. and BURMAN, J., concur.